539 So.2d 1212 (1989)
Donald J. KIMBLE and Sheila Smith Kimble, wife of Donald Kimble
v.
WAL-MART STORES, INC.
No. 88-C-1949.
Supreme Court of Louisiana.
March 13, 1989.
Rehearing Granted in part and Denied in part May 12, 1989.
*1213 John Olivier, Olivier and Brinkhaus, Sunset, for applicant.
Frank Flynn, Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, P.C., Lafayette, for respondent.
WATSON, Justice.
At issue in this slip and fall case is the apportionment of comparative negligence. The trial court found defendant Wal-Mart 100% negligent. The court of appeal amended the judgment, deciding that plaintiff Donald Kimble was 50% at fault.[1] A writ was granted[2] to weigh the parties' comparative fault in light of the factors enunciated in Watson v. State Farm Fire & Cas. Ins. Co.[3]

FACTS
On September 24, 1984, plaintiff Kimble, age twenty-four, was shopping during his lunch hour at a Wal-Mart store in Lafayette, Louisiana. Seeking gifts for his two children, he walked the length of an aisle in the toy department. As he turned into the next aisle, Kimble tripped, cut his forehead on a shelf, and fell to the floor on his back. When Kimble "came to" a moment later, there were three red toy rocking chairs on the white floor of the aisle, the unobserved cause of his fall. Donald Kimble sued Wal-Mart Stores, Inc., claiming that injuries to his head, jaw, neck, shoulder and back disabled him through the time of trial and into the future. His wife, Sheila, joined in the suit claiming loss of consortium.
Although there were no witnesses to Kimble's fall, it is undisputed that the three rockers clogged the aisle. They are approximately eighteen inches tall. With two of them upright and one lying on its back, Kimble's passage was effectively blocked. Todd Crawford, assistant manager of the store; Judy Reed, head of the toy department; and Marella Hefner, the first Wal-Mart employee to reach Kimble, all confirmed that the three toy rockers were in the aisle. Part of Judy Reed's normal daily routine is checking the aisles of the toy department. Five to fifteen minutes before Kimble's fall, two of the toy rockers were on the floor where the accident occurred, and she replaced them on the shelf.
*1214 Although Kimble stated in deposition that he was watching where he was going, it is likely that he failed to glance down at his feet because he was perusing items on the shelves. Kimble's description of the accident never varied. He told the employee who first found him, each of the treating doctors, the attorney deposing him, and the court that he was walking around the end of one aisle and tripped as he turned into the next aisle.
Crawford, the assistant manager, stated that merchandise was usually placed on the "end cap", the section of shelving across the ends of two aisles, "to draw additional sales". Because the accident happened on an "inventory" day, Wal-Mart's employees had more time than usual to spend on the floor where they would have been expected to notice and remove the fallen chairs.
The trial court awarded medical expenses of $13,033.57; $25,000 as lost wages; $50,000 for general damages; and $10,000 to Sheila for loss of consortium. The court of appeal affirmed these awards but deleted $5,000 for future medical expenses, which it deemed speculative.

LAW
When a customer proves that a foreign substance or object on a store's floor presented an unreasonable risk of injury which caused a damaging fall, the store must exculpate itself from a presumption of negligence. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685, 686 (La.1984).[4]
An actor's duty to keep a proper lookout is diminished when shelved merchandise distracts his attention. See Kavlich v. Kramer, 315 So.2d 282 (La.1975).
Apportionment of the parties' relative degree of fault involves weighing their conduct in light of the five Watson factors:[5]
"(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought."

CONCLUSION: LIABILITY
Shortly before Kimble's fall, Wal-Mart's employee Reed re-stacked two toy rockers. The most probable inference is that she re-stacked them improperly, allowing three to fall into the aisle. The chairs' red color was offset by their location at the end of an aisle and entirely across it. One rocker was lying on its back with only its spindly rungs in view.
The factors enumerated in Watson weigh in favor of Donald Kimble. Kimble's action in failing to look at the floor was inadvertent; one of Wal-Mart's employees knew that two rockers had previously fallen into the aisle, creating a likelihood that they might fall again. The risk created by Wal-Mart's negligence could have resulted in a more serious accident than that which occurred, particularly with an elderly or infirm victim.
Kimble's conduct was neither more nor less significant than that of any other shopper and was not inappropriate. Defendant's action in negligently stacking the toy chairs served no purpose.
Wal-Mart had a superior capacity to act because its employee Reed knew that the chairs had fallen into the aisle and might do so again.
Kimble's fault in failing to see the toy rockers was extenuated by his attention to the merchandise displayed on the shelves.
The Watson factors require a reapportionment of these parties' fault. None of the five Watson factors weigh in Wal-Mart's favor. Each weighs in Kimble's favor. The degree of fault assigned to Donald Kimble can be no more than 25% with the balance of 75% assigned to Wal-Mart Stores, Inc.

*1215 QUANTUM
Donald Kimble was treated at Our Lady of Lourdes Hospital and released on the day of the accident, to be readmitted the following day for an eleven day stay. His symptoms on admission were pain in the head and neck, and a large visible swelling on his back in the area below the left shoulder. Kimble's long-term symptoms include pain in his neck; pain, numbness, and tingling in his arm; constant severe headaches; episodes of syncope; and temporomandibular joint syndrome (TMJ).
Kimble had only worked at jobs requiring some heavy physical labor. Kimble's doctors testified that his pain and episodes of dizziness would restrict his ability to work.
A number of Kimble's relatives and friends testified that the accident and resulting disability had made Kimble depressed, impatient and difficult, thereby affecting his marriage. Donald Kimble and his wife Sheila testified that they no longer enjoyed their former satisfying emotional life and that they seldom had sexual relations.
Plaintiffs assign as error the court of appeal's failure to increase both the general damages and the award for lost wages. Plaintiffs also contend that the $5,000 award for future medical expenses is supported by the deposition testimony of several physicians. Dr. DeSonnier, a dentist who limits his practice to treatment of TMJ, stated that Kimble may need corrective dentistry in the future. Dr. Cobb, an orthopaedic surgeon who treated Kimble for the soft tissue injury to his back, said that Kimble might require medical visits and therapy through June, 1987. Dr. Domingue, a neurologist who treated Kimble for his headaches and dizziness, thought that Kimble might need follow-up care and medication until September of 1987. No dollar amounts were estimated by two of these physicians, Drs. DeSonnier and Domingue. Dr. Cobb suggested that Kimble might need six medical visits and two to three weeks of physical therapy at a maximum cost of $50 per visit.
Under these circumstances, an award of $2,500 for future medical expenses is appropriate. The judgment of the court of appeal is amended accordingly. See Briggs v. Hartford Ins. Co., 532 So.2d 1154, 1158 (La.1988); Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281, 1287 (La.1984). The court of appeal was correct in finding no abuse of discretion in the other damages awarded.

DECREE
For the foregoing reasons, the judgment of the court of appeal is affirmed except as to the apportionment of fault and the award of future medical expenses. The judgment of the court of appeal is amended as to the amount of future medical care, which is fixed at $2,500, and as to the percentages of fault, which are fixed at 25% for Donald Kimble and 75% for Wal-Mart Stores, Inc.
AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.
DENNIS, J., concurs.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
When one considers the significant duty placed on a merchandiser to provide a safe place for shoppers whose attention is attracted away from the floor by displays on the shelves, as compared to the lesser duty of a shopper to exercise care to protect himself from reasonably foreseeable hazards, there was no manifest error in the trial court's assessing 100% of the fault to the merchandiser. The court of appeal substituted its judgment for that of the trier of fact, and the trial court's apportionment of fault should be reinstated.

ON APPLICATION FOR REHEARING PER CURIAM
Our decree amended the judgment of the court of appeal as to quantum and percentages of fault, otherwise affirming its judgment. Costs were taxed by the court of appeal at 50% to plaintiffs and 50% to the defendant. We find merit in plaintiffs' argument that defendant should be cast for all costs and, accordingly, amend our decree to so provide. Plaintiffs' application for rehearing is denied in all other respects.
NOTES
[1] 527 So.2d 1163 (La.App. 3 Cir.1988).
[2] 532 So.2d 164 (La.1988).
[3] 469 So.2d 967 (La.1985).
[4] Cf. Act 714 of 1988.
[5] Watson v. State Farm Fire & Cas. Ins. Co., supra, 469 So.2d at 974.