719 So.2d 139 (1998)
Gloria Jean MORACE, Plaintiff-Appellee,
v.
MELVYN'S RESTAURANT, INC. and Lafayette Insurance Company, Defendants-Appellants.
No. 30988-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1998.
*140 Davenport, Files & Kelly by W. David Hammett, Monroe, for Defendants-Appellants.
Dennis Hennen, Monroe, for Plaintiff-Appellee.
Before MARVIN, C.J., and STEWART and PEATROSS, JJ.
MARVIN, Chief Judge.
The defendant restaurant and its liability insurer appeal a judgment awarding $15,800 to the plaintiff-patron, Gloria Morace, who *141 suffered injuries and a scar when she tripped over a chair in a passageway of the restaurant shortly after she entered it about one p.m. on a bright weekday in May 1995.
Appellants contend that the chair did not present an unreasonable risk of harm to restaurant customers and, alternatively, that plaintiff should have been found comparatively at fault and that the award should be found excessive. The trial court found that the chair had been in the passageway for about an hour before the incident and that plaintiff's vision, during the few seconds she had been inside the restaurant, had not adjusted to the contrasting dimness inside from the bright sunshine outside.
We amend to find plaintiff 50 percent at fault and otherwise affirm the judgment.

FACTS
The record supports the trial court's factual findings of how the accident occurred. The diagram which follows, not to scale, made from others in the record, generally depicts the relation of the restaurant entrance and the area in which the chair was located.
*142 
We review the record in the light that most favorably supports the judgment. Gloria Morace explained she was "kind of blinded," coming from bright sunshine outside and entering the restaurant lit by a neon beer sign on a back wall. She had been a frequent patron for 7-8 years and was familiar with the video poker room and the placement of tables, chairs and booths in the restaurant.
On the day of the incident the restaurant was "crowded" with patrons when she entered through the front door. She walked to her right after entering, noticing that the video poker room and the restaurant were filled with patrons, standing and seated. She saw that all tables and chairs were occupied. She stood and watched a couple leaving from one of the booths walking sideways through other customers toward her and the exit. After moving aside to let them pass and intending to go to the empty booth, she stepped forward on the dark carpet and fell over a dark gray chair in the aisle. The chair turned over when she stumbled into it.
To avoid falling directly on her face, she turned and hit the left side of her hip and *143 arm on the doorway of the video poker room, scratching her face. She was immediately assisted by the manager, whom she said told her that he had instructed his waiters "an hour ago to move this damn chair." After she declined the manager's offer to call an ambulance, he supplied towels and ice bags for her injuries and then carried her to her car and assisted her to the hospital emergency room.
Mrs. Morace suffered a cut on the shin of her right leg, requiring stitches and abrasions of this leg, scratches on her left arm and bruises on her left hip and head. She used crutches for a week after the incident. Her daughter assisted her with cooking. After her stitches were removed, Mrs. Morace does not walk as much as before.
On cross-examination Mrs. Morace said that after entering, she very briefly stopped twice, three or four seconds first and five to seven seconds next, while looking for a table. She explained her deposition estimate of stopping for 30 seconds, saying that she was "scared" when she gave her deposition.
Mrs. Morace did not see the chair until after she stumbled and fell over it. She was looking and heading toward the empty booth when the incident occurred. The restaurant employees who testified generally stated they had seen Mrs. Morace but most were not in a position to have seen the chair before she fell. One nearby waiter testified that he saw plaintiff enter the restaurant, walk around the corner and trip over the chair. He assumed the chair came from the table next to the video poker room, since a chair was missing from that table. He acknowledged it could have come from elsewhere. He did not see plaintiff stop or look around before proceeding toward the video poker room. Standing about ten feet from the accident, he did not know who placed the chair there or how long it had been there. He described the restaurant chairs as being dark blue.
The restaurant manager said the restaurant was crowded and that six employees were working up front with another four to five in the kitchen. He found Mrs. Morace on the floor, the chair at her feet and part of her body in the video poker room entry way. He also assumed the chair came from the 24" small table nearest the video poker entrance, because one of that table's two chairs was not at that table. Notwithstanding the manager's denial that he said to Mrs. Morace that he had told employees to move the "damn chair" an hour before she fell, the trial court expressly accepted her testimony over his. To his credit, he summoned a patron who was an emergency room nurse to attend Mrs. Morace.
The restaurant witnesses stated no one else had ever fallen over a chair or complained that the chairs were difficult to see or that the lighting was too dim. The restaurant always passed annual inspections by the fire department. Acknowledging he was not a lighting expert, the fire inspector found no problem with the restaurant lighting being too dim or hazardous.
Plaintiff's safety expert took photographs which are in the record, some of which were taken without a flash. His opinion, of course, differed from the opinion of the restaurant's safety expert who concluded the chair did not create an unreasonable risk to restaurant patrons.

LAW
On May 17, 1995 La. R.S. 9:2800.6 read as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and *144 that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
Specifically finding plaintiff to be totally credible and relying on White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081 and La. R.S. 9:2800.6(B), the trial court found that plaintiff had met the burdens required by applicable statutes and jurisprudence. The court reasoned that the restaurant owed a duty of care to its patrons to assure that the location was safe and the passageways were clear. Restaurant employees should not have allowed the chair to remain in the passageway for an undue amount of time. A number of people, however, negotiated this passageway and the chair during this time. While accepting the testimony of the safety experts for both sides, the trial court found that the accident would not have occurred if the chair had been in its proper place at the table.
After emergency room treatment, plaintiff saw a doctor five days later. Dr. Warren Daniel observed the cut and stitches on her shin along with lacerations on her left arm and right knee and prescribed conservative treatment of the injuries. After several visits during the summer and fall, Dr. Daniel last saw plaintiff on November 1, 1995. The doctor opined that plaintiff would have some visible scar on her shin. The fall did not worsen plaintiff's chronic Crohn's disease. The trial court awarded this plaintiff, born in 1937 and afflicted with degenerative changes in her hip and pelvis with Crohn's disease, $15,800 for pain and suffering and for the disfiguring scar. The trial court awarded all medical expenses subject to a credit for the medical payments made by defendants.
Plaintiff argues that the chair was blocking a main aisle and was not in plain view due to the brightness of the outdoors, the low lighting and the dark decor. All witnesses conceded that the chair was out of place. Defendant's expert concluded that a chair in the aisle of a restaurant is not a hazard, but acknowledged that if the chair had been in the aisle for long enough to have been noticed by employees it would have become a hazard. Importantly, the trial court accepted as credible the plaintiff's version that the manager stated to her that the chair should have been moved an hour before her fall.
Lighting was not at issue in Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212 (La. 1989), in which Kimble fell over three small rocking chairs which he did not see. He walked around the end of one aisle and tripped as he entered the next aisle. Kimble stated he was looking where he was going but did not look down because he was looking at the shelves. While Kimble failed to see the chairs, Wal-Mart employees knew some rockers had fallen into the aisle earlier. Wal-Mart was found 75 percent at fault and Kimble, 25 percent. Although decided under an earlier version of the law, Kimble, supra, assessed liability against a merchant who failed to keep an aisle clear in favor of a customer who was not looking where he stepped.
Because plaintiff admitted in brief that none of the restaurant employees saw the chair before the fall but all saw it afterwards, defendants contend that the trial court abused its discretion in finding the restaurant had actual notice of the chair in the aisle. However, the trial court made a specific finding that plaintiff was a credible witness and accepted her testimony that, while he was attending her wounds, the manager stated he had instructed employees to move *145 the chair an hour before. The trial court heard and rejected the manager's denial.
When testimony conflicts, reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court concludes that its own factual evaluations and inferences are as reasonable as those made by the trial court. Yuska v. HCA Health Services of Louisiana, Inc., 28,878 (La.App. 2d Cir.12/11/96), 684 So.2d 1093. On this record we cannot find clearly wrong the trial court's conclusion that the restaurant had actual and timely knowledge of the out of place chair in the passageway.

Comparative Fault
Defendants' assertion that the trial court erred in not assessing plaintiff with comparative fault has merit, notwithstanding the clearly wrong-manifest error standard of review. We disturb a trial court's findings only when the preponderance of the evidence does not provide a reasonable factual basis so as to allow us to determine that the trial court's findings are clearly wrong or manifestly erroneous.
In assessing comparative fault, courts consider (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm, 469 So.2d 967 (La. 1985). Varnell v. Louisiana Tech University, 30,260 (La.App. 2d Cir.2/25/98), 709 So.2d 890.
Comparative negligence is applicable to plaintiff who had a duty to see and avoid obvious hazards. Simmons v. City of Monroe, 588 So.2d 1357 (La.App. 2d Cir. 1991), writ denied, 591 So.2d 708 (La.1992) and cases cited therein. Defendants rely upon Trosclair v. Blanchard, 625 So.2d 737 (La.App. 1st Cir.1993). There no recovery was allowed plaintiff who fell while attempting to hurriedly step over a toddler gate in an open doorway. Plaintiff was very familiar with the gate and had crossed it safely many times. The court found that the toddler gate which could easily be unlatched to walk through was not unreasonably dangerous as used. Here Mrs. Morace walked into the restaurant and began to negotiate a passageway with which she was familiar. She was focused, however, on the empty booth and was headed in that direction when she stumbled, not on what may have been on the floor, paper, food or liquid or any small items, and failed to see the chair shown to be nearly 32½ inches high. Even in the contrasting relatively dark environment after emerging from bright sunlight, plaintiff should not have proceeded "blindly" toward the booth, as she acknowledged, oblivious of the chair immediately in front of her. In short, she failed to see what was there to be seen had she looked where she was walking. She should have paid some attention to her path. Others in the crowded restaurant obviously did. Under these circumstances, we find Mrs. Morace equally at fault with the restaurant.

Excessive Damages
Assertions of excessive general damages are without merit. In assessing damages in cases of offenses, quasi-offenses and quasi-contracts, much discretion is left to the trier of fact. La. C.C. art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Only after an articulated analysis of the facts discloses an abuse of discretion is examination of prior awards in similar cases proper. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Dixon v. Tillman, 29,483 (La.App. 2d Cir.5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174. The proper procedure for examining whether the award is excessive is to determine whether the *146 amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact. Likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.1993), writ denied, 619 So.2d 547 (La.1993).
The photographs, testimony and other evidence reveal that plaintiff received substantial injuries in her fall. The cut on her shin required stitches and left a scar. She sustained other lacerations and significant bruising. She received conservative medical treatment and made eight visits to the doctor with the last on November 1, 1995. She used crutches for one week. Viewing the evidence in the light most favorable to the plaintiff, the award is not an abuse of the trial court's discretion.

DECREE
The judgment is amended to decree that plaintiff and defendant are equally at fault, thus reducing her recovery by 50 percent. Cost of this appeal is assessed to plaintiff. As amended, and in all other respects, the judgment is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.