I ¡WHIPPLE, J.
In this slip and fall case, Wal-Mart Stores, Inc. (Wal-Mart) appeals from a judgment rendered in favor of plaintiff, Roland Wells, and against Wal-Mart in the amount of $15,000.00, plus medicals.[1] For the following reasons, we affirm.
*275 PROCEDURAL HISTORY
Roland Wells filed suit against Wal-Mart for injuries allegedly sustained when he slipped in a substance on the floor of the Wal-Mart store in Houma, Louisiana. During the pendency of the proceedings below, Wells died of unrelated causes, and his wife, Helen Wells, was substituted as plaintiff.
Following a bench trial, the trial court rendered judgment in favor of plaintiff, awarding $15,000.00 in general damages, plus the medical expenses Mr. Wells had incurred. From this judgment, Wal-Mart appeals.
LIABILITY OF WAL-MART
In its first and second assignments of error, Wal-Mart contends that the trial court erred in finding that it had actual or constructive knowledge of the presence of the substance on the floor prior to Mr. Wells’ fall and that it had failed to exercise reasonable care.
Louisiana Revised Statute 9:2800.6(B) establishes the burden of proof for a plaintiff in a claim against a merchant due to a fall on the premises. The plaintiff “shall” prove that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, pri- or to the occurrence; and
(3) The merchant failed to exercise reasonable care.
IsSince the statute uses the mandatory “shall” and the conjunctive “and” in listing these elements, a plaintiff must prove all three sections: (B)(1), (B)(2) and (B)(3). White v. Wal-Mart Stores, Inc., 97-0393, p. 4 (La.9/9/97), 699 So.2d 1081, 1084.
The evidence presented in the instance case establishes the following. On July 30, 1994, Mr. Wells and his nephew, Robert McLaurin, went shopping at Wal-Mart in Houma, Louisiana. While in the health and beauty aids department, Mr. Wells slipped on a creamy substance. McLaurin was on the next aisle when he heard a gasp, and upon turning down the aisle where Mr. Wells was shopping, he saw Mr. Wells down on the floor on one knee.
After assisting Mr. Wells to his feet, McLaurin began investigating to see what had caused Mr. Wells to slip. Upon getting down on his knees, McLaurin discovered several small droplets of a white creamy substance on the floor, as well as a greasy area, covering approximately twenty to twenty-two inches and spread in an oval pattern across the floor. McLaurin, who had experience in retail sales, testified that the greasy oval area appeared to have been caused by someone having inadequately wiped the white creamy substance off the floor.
McLaurin also discovered a bottle under a counter about five or ten feet away from the area where Mr. Wells had slipped. He testified that the bottle had a cracked lid and a reddish substance had leaked out. While he did not believe that this bottle was the source of the white substance in which Mr. Wells slipped, McLaurin noted that the cracked bottle he saw had a layer of dust on it, indicating to him that it had been on the floor for some period of time.
McLaurin further testified that a female Wal-Mart employee entered the aisle where Mr. Wells had slipped, and he related to her that Mr. Wells had slipped on a creamy substance. According to McLau-rin, the employee then indicated in an Lunhappy tone that she had “told her to keep this area clean,” apparently referring to another Wal-Mart employee.
Given this evidence, we find no manifest error in the trial court’s conclusion that Wal-Mart actually created the *276 hazardous condition upon which liability was based. The trial court concluded that “there was an apparent clean up attempt by Wal-Mart, but the clean up attempt, itself, made the floor slippery.”
In challenging the trial court’s conclusion that there had been an unsuccessful and inadequate attempt by Wal-Mart to clean up the spill, Wal-Mart notes that on cross-examination, McLaurin admitted that he had seen rolls of paper towels on poles around the store that were accessible to customers. .Thus, Wal-Mart contends, it is just as likely that a customer attempted to clean up the spill. However, where, as here, there are two permissible views of the evidence, the fact finder’s decision to choose between them does not constitute manifest error. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
Moreover, we note that the evidence relied upon by the trial court also supports a finding that defendant had constructive notice. To prove constructive notice, the claimant must show that the substance remained on the floor “for such a period of time that it would have been discovered if the merchant had exercised reasonable care.” LSA-R.S. 9:2800.6(0(1); White, 97-0393 at p. 7, 699 So.2d at 1086. In White, the Supreme Court explained that this temporal element requires a “positive showing” by the plaintiff of the existence of a hazardous condition prior to the fall, noting that this is not an “impossible burden.” White, 97-0393 at pp. 4-6, 699 So.2d at 1084-1086. As the Court further explained, whether the period of time was long enough for the merchant to have discovered the condition is a question of fact. White, 97-0393 at p. 4, 699 So.2d at 1084.
|,In the instant ease, McLaurin testified that the oval pattern of the greasy sheen on the floor indicated that someone had attempted to wipe up the substance. Thus, regardless of who actually wiped up the spill, the substance had obviously been on the floor long enough for someone to have sufficient time to retrieve something to attempt to wipe it up. Moreover, although McLaurin testified that the substance appeared relatively fresh, enough time had elapsed with the substance on the floor to allow someone to attempt to wipe up the spill. This fact, coupled with the additional evidence of the dusty bottle found five to ten feet away and the statement of the Wal-Mart employee in a disgruntled tone to the effect that an employee had been told to keep this area clean, evidence to which the trial court gave “credence,” constitutes positive evidence from which the trier of fact could infer that the substance had been on the floor for such a period of time that Wal-Mart could have discovered its existence if it had exercised ordinary care. See Lacy v. ABC Insurance Co., 97-1182, pp. 3-4 (La.App. 4th Cir.4/1/98), 712 So.2d 189, 192; see also Beninate v. Wal-Mart Stores, Inc., 97-802, p. 12 (La.App. 5th Cir.12/10/97), 704 So.2d 851, 856, writ denied, 98-0082 (La.8/13/98), 713 So.2d 470. Thus, we find no error in the trial court’s finding of liability on the part of Wal-Mart.
DAMAGES
In its third assignment of error, Wal-Mart contends that the general damage award of $15,000.00 was excessive. Mindful that the trial court has great discretion in assessing damages and that the appellate court should rarely disturb such an award, Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), we find no abuse of discretion by the trial court in its award to this particular plaintiff under the particular facts of this case.
|fiMr. Wells was sixty-six years old at the time of the incident. As a result of the fall, Mr. Wells experienced pain and swelling in his right knee as well as pain in the wrist and lumbar spine. He was treated by Dr. Russell Henry of the Internal Medicine Clinic who referred him to Dr. Richard Landry, an orthopedic surgeon. Dr. Landry diagnosed internal derangement of the knee. However, because evaluation of Mr. Wells for injuries suffered in this slip *277 and fall accident led to the discovery of other significant medical problems, treatment of the knee was not actively pursued. Nonetheless, it is apparent from the testimony of Mr. Wells’ wife and nephew that he continued to suffer from knee pain that interfered with his daily activities from the date of the fall until the time of his death over two years later.
Prior to the accident, Mr. Wells was a physically active man, able to perform such tasks as climbing ladders and house painting. However, after the fall, Mr. Wells’ knee pain caused him to walk with a limp, and he had difficulty even rising from a chair. Additionally, Mrs. Wells testified that Mr. Wells spent a great deal of time in bed as a result of the pain he suffered from these injuries. Given this evidence, we find no abuse of discretion in the trial court’s award of $15,000.00 in general damages.
CONCLUSION
For the above and foregoing reasons, the August 20, 1998 judgment in favor of plaintiff, Helen Tauzy Wells, and against defendant, Wal-Mart Stores, Inc., is affirmed. Costs of this appeal are assessed against defendant, Wal-Mart Stores, Inc.
AFFIRMED.

. Judgment was initially rendered against both Wal-Mart and William Moss. However, it appears that Moss was never served with a copy of the petition, and he never answered the petition or made an appearance in this matter. Thus, with the agreement of the par *275 ties, the court rendered an amended judgment against Wal-Mart only.