862 So.2d 433 (2003)
Jonathan JOHNSON, Plaintiff-Appellee,
v.
CITY OF WINNFIELD, Defendant-Appellant.
No. 37,939-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2003.
*435 Stamey & Miller, by J. Mark Miller, Joseph B. Stamey, Natchitoches, for Appellant.
R. Stuart Wright, Natchitoches, for Appellee.
Before GASKINS, DREW and MOORE, JJ.
MOORE, J.
The City of Winnfield appeals a judgment finding that one of its manhole covers posed an unreasonable risk of harm, that the city was negligent for allowing the condition to occur, that the plaintiff was not comparatively negligent, and awarding $15,000 in general damages. Finding no manifest error, we affirm.

Factual Background
The plaintiff, Jonathan Johnson, worked as a stock clerk at Kaye's Food Market (formerly known as Troy's) on West Court Street in Winnfield. On the afternoon of July 10, 2001, he was carrying three bags of groceries to the car for a customer, Mrs. Sharp. Mrs. Sharp had parked in the store's lot right next to a manhole owned by the city for its sewer system, but neither she nor Johnson had noticed the manhole cover by the car's rear passenger door.
When he was about to place the bags in the back seat, Johnson stepped on the manhole cover. It suddenly shifted or gave way, and his right leg fell into the hole. He described making a "big fall" as the cover "flipped up." Mrs. Sharp did not see him step on the cover, but saw that he "went down" and his leg was in the hole, above the knee. Mrs. Sharp also testified that she had shopped at the store for 25 years and never noticed anything wrong with the manhole.
Johnson was taken to Winn Parish Medical Center and diagnosed with a strained right knee, a hematoma to the knee, and a sprained right ankle. He missed 3½ months of work, had to use crutches for three months, and testified that his knee still swells when he puts pressure on it.
Immediately after the accident, the store manager, Kenneth Bustin, lifted the cover so Johnson could extricate his leg. Bustin described the cover as "worn on the bottom from erosion," with the "little lip * * * around the bottom, that sits in the hole, that part was worn off." Bustin slid the cover back onto the manhole and then tried to stand on it; "it just tilted up a little." Bustin added that he had worked at the grocery store for 23 years, never noticing anything wrong with this manhole. Bustin phoned the city to report the accident.
A city maintenance worker, Hugh Goods, responded to the call. He testified that when he arrived, the cover looked "fine"; he tried walking across it, "and it didn't pop up on me." Nonetheless, he replaced the cover with a new one. He explained that manhole covers are not very mobile, weighing over 100 lbs. and usually requiring two city workers to move. He had never seen one "rust out," but admitted that if someone had lifted it and not replaced it securely in the ring, it would be unsteady.
Goods also testified that shortly before Johnson's accident, a private contractor had used this manhole to run a sewer line from the old Dairy Queen to the main sewer line. On cross examination by the city's attorney, he admitted that he had inspected the manhole after that job was complete.
The city's supervisor of water and sewerage, James Waters, testified that manhole covers "don't rust out." He admitted that heavy traffic can damage the ring in *436 which the cover fits, leaving the cover loose, but he felt this was unlikely in a store parking lot. The city's director of public works, Bill Kelly, testified a manhole cover is 115 lbs. of cast steel that does not rust, and requires two men to move; the cover and ring are "dovetailed together" like a "cork in a bottle." He admitted that heavy trucks driving over a manhole at high speed can cause the cover to bounce up. Kelly also testified that a private contractor had worked on the sewer line "within a couple of months" before Johnson's accident, and that the city usually inspected the work of such contractors on the main sewer line. Neither Waters nor Kelly knew what became of the this cover after Goods removed it from the manhole.
Goods, Waters and Kelly all testified they had never received any complaints regarding this manhole cover. By stipulation, all five city operators also testified they never received a single call about it. Mayor Deano Thornton testified the only complaint about this manhole had been regarding sewer fumes around 1995. The city's employees agreed there was no policy or procedure for routine inspection of all manholes. However, if city employees working near a manhole notice a problem, they are supposed to report it.

Action of the Trial Court
After trial in February 2003, the district court rendered written reasons for judgment. The court accepted Bustin's testimony that the manhole cover had "a lot of corrosion and wear on the lip and the lip would not fit securely." The court found this was a dangerous condition that was not apparent to the naked eye. The court then accepted Goods's testimony that a week prior to the accident work was done on the Dairy Queen on the front of the strip mall; however, "no maintenance check or inspection of the manhole cover by any city employee during or after the work was completed for the Dairy Queen." The court found that despite having actual knowledge of the work being performed in the manhole, the city failed to inspect it, and this constituted negligence. The court rejected, however, Goods's testimony that he saw nothing wrong with the manhole cover immediately after the accident. The court further found that Johnson was not at fault.
The court awarded medical expenses of $3,153.93 and lost wages of $3,800.00, amounts not contested on appeal. The court then found that Johnson sustained not just a sprain or strain but an injury to his ligament, resulting in severe pain for over three months, as well as some residual pain and occasional swelling which would likely persist. Finding Johnson's injuries commensurate with those in Minvielle v. Lewis, 610 So.2d 942 (La.App. 1 Cir.1992), the court awarded general damages of $15,000. The city has appealed suspensively.

Discussion: Constructive or Actual Notice
By its first assignment the city urges the district court erred in finding actual or constructive notice of the defect, a reasonable opportunity to remedy it, and failure to do so, as required by La. R.S. 9:2800 B. The city shows that lack of a plan to inspect its property does not impute constructive knowledge of defects. Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216. The city also shows that none of the 10 persons charged with fielding complaints ever received any regarding this manhole cover. Further, the city contends that the court should not have rejected Goods's testimony that he inspected the cover when the Dairy Queen work was complete, about one week before the accident, and found nothing wrong with it. Finally, the city argues that in *437 cases involving water meter covers, courts usually find the plaintiffs failed to prove the condition had existed long enough to impute knowledge of a defect to the municipalities. Prudhomme v. City of Iowa, XXXX-XXXX (La.App. 3 Cir. 2/9/00), 758 So.2d 275; Lemoine v. Jefferson Parish Dept. of Water, 94-440 (La.App. 5 Cir. 11/29/94), 646 So.2d 1194; Salone v. Jefferson Parish Dept. of Water, 94-212 (La. App. 5 Cir. 10/12/94), 645 So.2d 747; Kammerer v. Sewerage & Water Bd. of New Orleans, 93-1232 (La.App. 4 Cir. 3/15/94), 633 So.2d 1357, writ denied, 94-0948 (La.7/1/94), 639 So.2d 1163.
A public entity is responsible under a theory of strict liability for damages caused by the condition of buildings within its care and custody. La. R.S. 9:2800 A. Its liability is limited, however, to cases in which the plaintiff can show that the public entity (1) exercised care and custody of the defective thing, (2) had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, (3) had a reasonable opportunity to remedy the defect, and (4) failed to remedy the defect. La. R.S. 9:2800 B; Jones v. Hawkins, supra; Whitaker v. City of Bossier City, 35,972 (La.App. 2 Cir. 4/5/02), 813 So.2d 1269. Constructive notice is defined as "the existence of facts which infer [sic ] actual knowledge." La. R.S. 9:2800 C; Whitaker v. City of Bossier City, supra.
The district court's findings pursuant to R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566; Joseph v. City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 3/5/03), 842 So.2d 420. Under this review, the appellate court will review the entire record to determine whether the trial court's findings were clearly wrong or manifestly erroneous. Stobart v. State, 617 So.2d 880 (La.1993).
In order to reverse, the appellate court must find that a reasonable basis does not exist for the finding of the trial court and that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
Because of its superior position to view the demeanor of witnesses, the district court's decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Id.; Collins v. City of Shreveport, 35,172 (La.App. 2 Cir. 10/31/01), 799 So.2d 630.
We have closely reviewed all the evidence summarized earlier in this opinion. It is not disputed that the city owned the manhole and thus had care and custody of it. Three city employees, Goods, Waters and Kelly, uniformly testified that manhole covers do not rust out, but admitted that sometimes they can be dislodged from their outer ring and thus become unstable. Johnson testified that the cover "flipped up" when he stepped on it, and Kenneth Bustin said that it wobbled in place when he stood on it shortly after the accident. On this record, the district court was entitled to find that the manhole cover was not secure in its ring and thus posed an unreasonable risk of harm.
The city urges that the facts do not permit a finding of constructive knowledge. However, the city's employees, Bill Kelly and Hugh Goods, established that a private contractor did work in that manhole shortly before the accident. Kelly testified that after the job was completed, the city would have checked work to make sure that conditions were safe. Goods admitted, somewhat reluctantly, that he had looked at the cover a week or two before *438 the accident.[1] We cannot say that the court's assessment of Goods's testimony is unreasonable. Rosell v. ESCO, supra. The district court found that his inspection a week or so before the accident constituted actual notice of the condition. On this record, the court was not plainly wrong to find such notice of the defect.
Finally, the city urges that even if Johnson proved that the manhole cover was defective and that actual or constructive notice existed, the city did not have a reasonable opportunity to remedy the defect. The supervisor of public works, Kelly, testified that if an employee sees a loose manhole cover, he is supposed to repair it. The court also found that Goods had looked at this cover a week or so before the accident. From this evidence, the court was entitled to infer that in the intervening time, Goods should have reported it and the city should have repaired it. We detect no manifest error in this inference.
In short, we are unable to declare that the district court's findings lack a reasonable basis in the record and that they are plainly wrong. Stobart v. State, supra; Mart v. Hill, supra. This assignment of error lacks merit.

Comparative and Third-Party Fault
By its second and third assignments the city urges the district court erred in failing to assess all or a portion of the fault to the plaintiff or to third parties who contributed to his harm. It argues that Johnson should have watched where he was walking and was at fault for stepping on a manhole cover that was not securely in place. It urges that he owed a heightened standard of care because his view was obstructed by shopping bags. Carr v. City of Covington, 477 So.2d 1202 (La.App. 1 Cir.1985), writ denied, 481 So.2d 631 (La.1986); Barnes v. New Hampshire Ins. Co., 573 So.2d 628 (La. App. 2 Cir.1991).[2] Arguing that the unnamed contractors who performed work at the Dairy Queen must have caused the defect that the city failed to discover, the city shows that fault may be assessed to non-parties. Dumas v. State, XXXX-XXXX (La.10/15/02), 828 So.2d 530.
If a person suffers injury, death or loss as a result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable are reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss. La. C.C. art. 2323 A. Liability for damages caused by two or more persons is a joint and several obligation; each joint tortfeasor is liable for not more than his degree of fault. La. C.C. art. 2324 B. The allocation of fault is a factual determination subject to the manifest error rule. Petre v. State, XXXX-XXXX (La.4/3/02), 817 So.2d 1107; Holloway v. Midland Risk Ins. Co., 36,262 (La.App. *439 2 Cir. 10/30/02), 832 So.2d 1004, writ denied, XXXX-XXXX (La.3/28/03), 840 So.2d 571.
While it is clear that Johnson was carrying three paper grocery bags, he did not say that his view was obstructed. Even had it been, neither he nor Mrs. Sharp, the customer, noticed anything wrong with the manhole cover before the accident; Kelly, the director of public works, admitted Johnson did nothing wrong by stepping on it. On this evidence, the court was entitled to find that Johnson exercised reasonable care and was not at fault in causing the accident.
The district court found that the manhole cover "would have been removed and reset by the persons performing work on the sewerage line to the Dairy Queen building," but did not find them at fault. However, Kelly testified that the city usually inspected the work of private contractors; the court explicitly found that had it done so, it "could have prevented the existence of an unreasonable risk of harm." Compared to the city's acknowledged duty to inspect and repair, the fault of the unnamed third parties is negligible. Under the circumstances, the court was not plainly wrong in declining to assess third-party fault.
These assignments of error lack merit.

General Damages
By its final assignment the city urges that general damages of $15,000 are excessive for what was, in essence, a soft tissue injury to the leg. Citing Dr. Sandifer's medical records, the city argues that Johnson suffered no broken bones or torn ligaments, only a strained right knee with hematoma and a sprained right ankle; that he was released to light duty work in 2½ months and sought no further medical treatment after 3½ months. The city suggests a maximum award of $3,500. Dawson v. Brookshire Grocery Co., 31,042 (La. App. 2 Cir. 9/23/98), 718 So.2d 623; Dixon v. Tillman, 29,483 (La.App. 2 Cir. 5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174; Diaz v. Schwegmann Giant Supermarkets Inc., 533 So.2d 1034 (La.App. 4 Cir.1988).
In the assessment damages in cases of offenses, quasi-offenses and quasi-contracts, discretion must be left to the judge or jury. La. C.C. art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the person under consideration. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Morace v. Melvyn's Restaurant Inc., 30,988 (La.App. 2 Cir. 9/23/98), 719 So.2d 139. The proper procedure for examining whether an award is excessive is to determine whether it can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact. Morace v. Melvyn's Rest., supra; O'Neal v. Scott, 34,276 (La.App. 2 Cir. 12/20/00), 775 So.2d 1155.
The district court reviewed Johnson's medical records, finding an early "impression" of a medial collateral ligament tear and, later, a diagnosis of a strained medial ligament. The court explicitly accepted Johnson's description of continued pain and occasional swelling some 18 months after the accident. Although it was a soft issue injury, its duration distinguishes it from the cases cited by the city. The court also accepted that Johnson could expect occasional pain and swelling well into the future. On this record, we cannot say the award of $15,000 is excessive. It appears to be consistent with the more similar injuries reported in Minvielle v. Lewis *440 and Morace v. Melvyn's Restaurant, supra, and in Wells v. Wal-Mart Stores Inc., 98-2517 (La.App. 1 Cir. 9/24/99), 754 So.2d 273, writ denied, 99-2963 (La.12/17/99), 752 So.2d 857.
This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. Appellate costs of $142.50 are assessed against the City of Winnfield in accordance with La. R.S. 13:5112 A.
AFFIRMED.
NOTES
[1] On direct examination by Johnson's counsel:

Q. When is the last time you checked this manhole?
A. Maybe a couple of days ago.
Q. I am talking about before the incident, July 2001.
A. Before the incident, I think it was maybe prior a week to that. * * *
Q. So, you remember back two years ago, that two weeks before this, you looked at this manhole?
A. I am estimating. It might have been earlier or whatever. I am just saying, about a week later. R.pp. 137-138.
[2] The city also cites Williams v. City of Marksville, XXXX-XXXX (La.App. 3 Cir. 3/5/03), 839 So.2d 1129, in support of this rule, but we do not see that Williams has anything to do with a pedestrian's duty to watch the ground in front of him.