802 So.2d 983 (2001)
Janie WHATLEY, Plaintiff-Appellant,
v.
CITY OF WINNFIELD, Louisiana and Office of Risk Management, Defendant-Appellee.
No. 35,132-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*984 Allan D. Smith, Richard E. Starling, Jr., Pineville, Counsel for Appellant.
Randall B. Keiser, Stacy C. Auzenne, Alexandria, Counsel for Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
WILLIAMS, Judge.
The plaintiff, Janie Whatley, appeals a judgment in favor of the defendant, City of Winnfield. The district court granted the defendant's motion for summary judgment, finding that the City did not have any notice of an unreasonably dangerous condition. For the following reasons, we reverse and remand.

FACTS
On June 23, 1997, Janie Whatley traveled to Winnfield, Louisiana, to visit a friend. Whatley went to purchase cigarettes at the Smoke Stack store, which was located near the corner of Lafayette and Abel Streets. There were angled parking spaces along the sidewalk and three circular water meter "casings," each approximately 20 inches in diameter, were set into the ground in the parking area. In her deposition, Whatley testified that while she was walking between the store and her vehicle, her foot became caught in one of the water meter casings. She tripped and fell to the ground, landing on her tailbone. Whatley was injured as a result of the fall.
Jeanette Jordan, an employee of the Smoke Stack, testified by deposition that while looking out of the store window, she saw Whatley fall, but did not see what caused her to fall. Jordan approached to assist Whatley and observed that the water meter cover was ajar. Jordan stated that she had not seen any of the water meters uncovered during the previous eight months she had worked at the store.
James Waters, Supervisor of the Winnfield Water and Sewer Department, testified that the water meter covers are locked in place with a key used by city employees to open the covers and read the meters. Waters stated that the key is approximately six inches long and must be used to unlock and remove the cover. Waters did not believe a person could open a water meter cover with another instrument, such as a screwdriver. He testified that he was not aware of a reason for anyone other than a city employee to possess a meter key. He further testified that if the water meter cover was properly locked, it should not slide or move.
Winnfield Mayor Deano Thornton testified that city water meters were read once each month. The City's utility records showed that the meters at Lafayette and Abel Streets were last read by Floyd Parker on June 13, 1997, ten days prior to the accident. Thornton testified that he had *985 checked the City's work orders for the period prior to Whatley's fall and did not find a record of any complaints about the meters at that location. Thornton explained that the meter lids were held in place by a metal latch that was turned with a key to secure the cover to the water meter casing.
Floyd Parker testified that prior to the accident, he had never found the water meters uncovered at the Lafayette and Abel intersection. Parker stated that local plumbers might have access to the meter keys in order to perform maintenance at a residence or business. Parker testified that the only way a locked water meter cover could become ajar would be if a vehicle rode over the meter and broke the cover.
Mary Lawrence, owner of the building at the corner of Lafayette and Abel Streets, testified that she had noticed one of the water meter covers sitting ajar on several occasions prior to 1997, but could not specify when. Lawrence did not recall mentioning the loose meter cover to any City employee.
The plaintiff, Janie Whatley, filed a petition for damages against the defendant, City of Winnfield. Subsequently, the City filed a motion for summary judgment. The parties submitted briefs and the matter was taken under advisement. The district court issued written reasons for judgment, finding that the evidence did not show the City had received actual or constructive notice of an unreasonably dangerous condition involving the meters located at the accident scene prior to the occurrence. The court rendered judgment granting the City's motion for summary judgment and dismissing the plaintiff's claims. The plaintiff appeals the judgment.

DISCUSSION
The plaintiff contends the district court erred in granting the motion for summary judgment. Plaintiff argues that a genuine issue of material fact exists concerning the issue of whether a city employee negligently created the dangerous condition by failing to properly secure the water meter cover.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA-C.C.P. art. 966(C)(2).
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the mover is entitled to summary judgment. Article 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
In order to recover against a public entity for damages due to a defective condition, the plaintiff must prove by a preponderance of evidence: (1) the thing that caused her damages was in the defendant's custody; (2) the thing was defective due to *986 a condition that created an unreasonable risk of harm; (3) the defendant possessed actual or constructive notice of the defect, yet did not take corrective action within a reasonable period of time; and (4) the defect was a cause in fact of the plaintiff's harm. LSA-R.S. 9:2800; Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216. Proof by a preponderance of evidence means that, when taken as a whole, the evidence shows that the fact or cause sought to be proven is more probable than not. Vig v. City of Shreveport, 28,530 (La.App.2d Cir.8/21/96), 679 So.2d 524, writ denied, 96-2285 (La.11/15/96), 682 So.2d 775.
The requirement of notice to the municipality is inapplicable to a case where the dangerous condition is attributable to negligent acts of the city or its employees. Only where the negligence relied upon is the failure of the city to repair a defective condition not caused by its own act or neglect is the question of notice an essential element. Pickens v. St. Tammany Parish, 323 So.2d 430 (La.1975). When the municipality creates the defective condition by its own substandard conduct, it is presumed to have knowledge of the hazardous condition. Toledano v. Sewerage & Water Board, 95-1130 (La.App. 4th Cir.3/14/96), 671 So.2d 973.
In the present case, the plaintiff filed suit against the City under the theories of negligence and strict liability. Defendant filed a motion for summary judgment on the grounds that plaintiff could not show that the City had received actual or constructive notice of the allegedly uncovered water meter. In support of its motion, defendant submitted the deposition testimony of city employees who stated that they had not received any complaints regarding uncovered water meters at Abel Street.
Virginia Smith, manager of the city utility office, testified that she had not received any complaint that a meter cover was missing or loose at the accident scene prior to the date of plaintiff's fall. Mayor Thornton testified that he had not been informed personally or through his office about any problems with the water meter covers at Abel Street. The mayor's secretary, Sherry Potts, testified that she had checked the office telephone log and city work orders and that she did not have any record of complaints about missing or unlocked meter covers at that location from October 1996 through the date of the accident.
In response, the plaintiff argues that although the City did not receive notice of the unsecured meter cover from a third party, such notice was not necessary because of the evidence indicating that the dangerous condition was caused by the negligence of a city employee for which the defendant was liable. The plaintiff presented testimony by James Waters, who stated that opening and locking water meter covers required the use of a particular key, which was only available to city meter readers and several other workers in the Winnfield Water Department. Waters testified that he was not aware of anyone who possessed a meter key other than city employees. Waters stated that if the meter cover was properly locked, then it should not move or slide when a person steps on the meter.
Plaintiff presented evidence that a city employee read the water meter on June 13, 1997, and that ten days later, on June 23, 1997, the meter cover was loose and not sitting securely when plaintiff stepped into the meter casing and fell. In addition, the plaintiff produced testimony by Parker, the meter reader, who acknowledged that the only way to unlock the meter cover was with a key. Parker testified *987 that although local private plumbers may have possessed meter keys to perform repairs, if plumbing services were not required at the building served by the meter, then only a city employee would have removed the cover with a key. The owner and a lessee of the building testified that they had not contacted anyone to perform plumbing work from the date the meter was read in June 1997 to the date of the plaintiff's accident.
The foregoing testimony indicates that the meter cover could only be removed by the use of a key, which was in the possession of city employees, and that under the circumstances of this case only the city meter reader could have left the cover unlocked in a position to become ajar. Mayor Thornton acknowledged that a partially uncovered water meter presented an unreasonable risk of injury to pedestrians. Thus, plaintiff produced prima facie evidence that the city employee's act created the dangerous condition. Consequently, the issue of notice is inapplicable to the present case.
In his deposition, Parker testified that he did not recall ever finding the meters on Abel Street uncovered, ajar or broken and that to the best of his knowledge, he had never forgotten to lock a meter cover. Parker stated that there were over 3,500 water meters in the city and that "I have never been called to an incident where one ... was left unlocked... so I'm just ... assuming that ... as far as I can remember, I've locked every one of them that I've opened." Parker's denial that he left the meter cover unlocked after reading the meter on June 13, 1997, raises a factual dispute which must be resolved by the trier of fact after weighing the credibility of the witnesses and assessing the evidence. Summary judgment is not appropriate in situations involving issues of credibility. Smith v. Lynn, 32,093 (La.App.2d Cir.8/18/99), 749 So.2d 692.
On a motion for summary judgment, the district court must ask not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff upon the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Two Feathers Enterprises, Inc. v. First Nat'l Bank of Commerce, 98-0465 (La. App. 4th Cir.10/14/98), 720 So.2d 398. Here, plaintiff presented evidence that a key was required to remove the meter cover, that on June 13, 1997, a city employee acted to remove the cover with a key, that ten days later the meter cover was unlocked and ajar, that there was no record a plumber or other person would have used a key to unlock the meter during that time period and that the plaintiff was injured after stepping into the partially uncovered water meter.
After reviewing the testimony, we conclude that the plaintiff produced sufficient evidence to support a trier of fact's finding that more probably than not the city employee's negligence created the hazardous condition of the unlocked meter cover. Based upon this record, the City failed to satisfy its burden of demonstrating the absence of a genuine issue of material fact. Consequently, the district court erred in granting the motion for summary judgment. Accordingly, we shall reverse the judgment and remand this case for further proceedings.

CONCLUSION
For the foregoing reasons, the district court's judgment granting the motion for summary judgment is reversed. This case is remanded to the district court for further proceedings consistent with this opinion. Appeal costs in the amount of $141 *988 are assessed to the appellee, City of Winnfield.
REVERSED AND REMANDED.