STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 18-900

DEMETRIC TANNER

VERSUS

LAFAYETTE CITY-PARISH
CONSOLIDATED GOVERNMENT

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20163619
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

AFFIRMED.

Cooks, J., dissents and assigns written reasons.

**Robert A. Mahtook, Jr.**
**Mahtook & LaFleur, L.L.C.**
**P. O. Box 3089**
**Lafayette, LA 70502-3089**
**(337) 266-2189**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Lafayette City-Parish Consolidated Government**

**Justin T. Morales**
**The Townsley Law Firm**
**3102 Enterprise Blvd**
**Lake Charles, LA 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **Demetric Tanner**

**EZELL, Judge.**

Demetric Tanner appeals a trial court judgment granting summary judgment in favor of the Lafayette Consolidated Government (LCG) and dismissing her case. Ms. Tanner alleges that there are genuine issues of material fact as to whether the LCG had knowledge of a dangerous condition of one of its manhole covers.

## FACTS

On September 9, 2015, Ms. Tanner was going to the Legacy Bar on Jefferson Street in Lafayette, Louisiana. She forgot her driver's license, so she and a friend went back to her car to get it. She saw a friend across the street and proceeded to go to talk to the friend. The friend walking across the street with her was on her left and slightly behind her. According to Ms. Tanner's deposition, she took a couple of steps into the street. Ms. Tanner claims she stepped on a manhole cover and it popped up, hitting her ankle and leg, at which time her leg went in the manhole. As a result of the incident, she alleges she injured her knee and other body parts. Ms. Tanner stated that her friend said the manhole cover was flat before the accident.

Ms. Tanner filed suit against the LCG on July 8, 2016. Subsequently, the LCG filed a motion for summary judgment. A hearing on the motion was held on September 10, 2018. Following the hearing, the trial court ruled that the LCG did not have actual or constructive knowledge of any defects with the manhole cover. Judgment was signed on September 17, 2018, dismissing Ms. Tanner's claims against the LCG. Ms. Tanner then filed the present appeal.

## SUMMARY JUDGMENT

On appeal, Ms. Tanner alleges the trial court erred in granting summary judgment in favor of the LCG. She argues there are genuine issues of material fact concerning the LCG's knowledge of a dangerous condition.

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). Appellate courts review the grant or denial of a motion for summary judgment de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate., *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, p. 4 (La. 2/26/08), 977 So.2d 880, 882-83; La.Code Civ.P. art. 966(A)(3).

The moving party has the burden of proof unless the mover "will not bear the burden of proof at trial on the issues that is before the court on the motion for summary judgment." La.Code Civ.P. art. 966(D)(1). In that case, the mover need only "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

Louisiana Revised Statutes 9:2800(C), regarding a claim against a public entity for damages caused by things in its care and custody, provides, in pertinent part:

> [N]o person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entitled for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

In order to establish liability under La.R.S. 9:2800, the supreme court has held that a plaintiff must prove: "(1) custody or ownership of the defective thing by the

public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation." *Chambers v. Village of Moreauville*, 11-898, p. 5 (La. 1/24/12), 85 So.3d 593, 597. The failure to establish any one of the elements will defeat a claim under La.R.S. 9:2800 against a public entity. *Walters v. City of W. Monroe*, 49,502 (La.App. 2 Cir. 2/4/15), 162 So.3d 419, *writ denied*, 15-440 (La. 5/15/15), 170 So.3d 161.

Constructive notice is defined as "the existence of facts which infer actual knowledge." La.R.S. 9:2800(D).

Ms. Tanner argues that this manhole cover should have been secured or bolted down because it was in a vehicle's wheel path. She argues that the LCG is presumed to have knowledge of this defect since this condition has existed for over twenty years.

This court has held that a public entity is deemed to have constructive notice of a defect when the defect has existed for such a period of time that the public entity should have discovered it by the exercise of ordinary care and had the opportunity to protect the public from injury by fixing the defect. *Scott v. Lafayette Consol. Gov't-Risk Mgmt. Div.*, 10-716 (La.App. 3 Cir. 12/8/10), 52 So.3d 1068.

Pursuant to La.Code Civ.P. art. 1442, depositions of Mitchell P. Wyble, the Public Works Civil Engineering Supervisor, project control for the LCG, and Eddie Wiltz, Project Coordinator for the LCG, were taken. Excerpts from these depositions were introduced by the LCG in support of its motion for summary judgment.

The LCG does not deny that it owns the manhole cover involved in this case. Mr. Wyble, an employee with the LCG for thirty-two-and-a-half years, explained

3

that his department would pick and choose the manhole covers depending on the application it would be used for. This cover was installed in the early to mid-1990s when Jefferson Street was reconstructed. The cover is in an area off the street in a corner by the driveway entrance to a parking lot and next to a fire hydrant. It is a standard manhole cover without vents. The cast-iron cover weighs 120 pounds and requires a special tool similar to a crowbar to lift it. There is no mechanism to keep the cover in place except the weight of the cover. Mr. Wyble stated that a locking mechanism on a manhole cover may be necessary if it is in the wheel path of a vehicle. However, the LCG has no policy of placing locking mechanisms on manhole covers. The LCG tries to keep manholes off travel lanes and out to the edge because it does not want someone working in a manhole in the path of a vehicle.

Mr. Wyble explained that water from the street does not enter the manhole but there are lines running under the manhole cover which drains the water. He stated that rainwater collected in the adjacent parking lot drains into lines running under the manhole cover. Mr. Wyble has seen a manhole cover get out of place before and agreed that excessive water in the street could lift a manhole cover, but he never saw a manhole cover in Lafayette lifted by water pressure. He also stated that not enough water gets into the basin to require ventilation. As explained by Mr. Wyble, the LCG does not inspect or maintain manhole covers unless a problem has been reported. There is also no policy in place for the LCG employees to report a dangerous condition, but they will report an issue if they see something.

Mr. Wiltz agreed that the LCG only inspects manholes if it receives a request due to a citizen's concern and there is no procedure in place to see if covers are sitting flush in the frame. He agreed that other employees would report a cover that is not flush in the frame. Mr. Wiltz was not aware of any reports of a cover not

4

sitting flush in the frame. Mr. Wiltz's supervisor notified him of this accident, and he went to check it out a day or two later, but found nothing wrong with the cover. The frame was intact, and there were no breaks or cracks in the cover. There was no water in the drain. If an LCG employee accessed the manhole, there would be an express written order on file. There was none. Mr. Wiltz explained that private contractors are supposed to get permission from the LCG to assess the manhole, but they don't always.

In opposition to the motion for summary judgment, Ms. Tanner introduced the affidavit of Jason T. English, a professional engineering consultant from Texas. He stated that "[a]bsent of intended removal of the lid with a special tool, the most likely causes for a manhole lid to become displaced are vehicular traffic, internal pressure due to liquid or gas, or damage to the frame due to deterioration, shifting of the ground, or adjacent construction activities." Mr. English was critical of the LCG for failing to establish and implement an adequate safety inspection and maintenance program for manholes located in public walkways and streets. He also criticized the failure of the LCG to install a vented manhole lid and failure to install a secured lid. He opined that the lid was in the potential wheel path of traffic. Mr. English never examined the manhole cover.

We first observe that the LCG's failure to have a plan for periodic inspections does not impute constructive notice. *See Scott*, 52 So.3d 1068; *Jones v. Hawkins*, 98-1259, 98-1288 (La. 3/19/99), 731 So.2d 216. Furthermore, there is no evidence that the lid in question was lifted by water pressure. To the contrary, evidence indicated that there had never been a manhole cover displaced by water pressure in Lafayette. Pictures of the manhole cover attached to the depositions of Mr. Wyble and Mr. Wiltz clearly show that it is not in the wheel path of traffic, but in a corner

of a raised curb, next to a driveway and fire hydrant, and out of the lane of travel.[1] Furthermore, pursuant to La.R.S. 32:143, no person shall park a vehicle within fifteen feet of a fire hydrant or in front of a public or private driveway, so that pursuant to the law, there should be no vehicles in this area. Additionally, there was never a report before this accident of the manhole cover being displaced. Following a report of this accident, Mr. Wiltz checked out the manhole cover and found no issues.

We agree with the trial court that the LCG was entitled to summary judgment dismissing Ms. Tanner's case, as there is no genuine issue of material fact that the LCG did not have actual or constructive notice of any problems with this manhole cover.

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Demetric Tanner.

**AFFIRMED.**

---

[1] That picture is attached to the end of this opinion.



000144

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

18-900

DEMETRIC TANNER

VERSUS

LAFAYETTE CITY-PARISH
CPNSOLIDATED GOVERNMENT

**COOKS, J. dissent**.

The majority affirms the trial court's granting summary judgment applying the provisions of La.R.S. 9:2800 because, it says, "there is no genuine issue of material fact that the LCG did not have actual or constructive notice of any problems with this manhole cover" as required by La.R.S. 9:2800. **The provisions of La.R.S. 9:2800 are not applicable to this case because Plaintiff did not choose to pursue her claim under La. Civ.Code art. 2317 or 2317.1.** Plaintiff's petition includes only allegations of general negligence under La. Civ.Code art. 2315. Louisiana Revised Statutes 9:2800 (emphasis added) expressly *applies only to claims brought under La.C.C. arts. 2317 and 2317.1*:

> Except as provided for in Subsections A and B of this Section, no person shall have a cause of action *based solely upon liability imposed under Civil Code Article 2317* against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

In *Clarkston v. Louisiana Farm Bureau Cas. Ins. Co.*, 07-158 pp. 21-22, (La.App. 4 Cir. 7/2/08), 989 So.2d 164, 180–81, *writt denied*, 08-1768 (La. 10/31/08), 994 So.2d 539 (emphasis added) the fourth circuit upheld the trial court's denial of a motion for directed verdict that defendants therein premised on the

1

plaintiffs' failure to sustain the burden of proof on notice under the provisions of La.R.S. 9:2800:

> In addressing this matter, we recognize the law is clear, whether one seeks a cause of action under strict liability or La.Code Civ. art. 2315 negligence, the legal analysis is essentially the same. The primary distinction is that, under strict liability, the plaintiff does not have to prove the owner or custodian of the thing which caused the damage knew or should have known of the potential risk involved. *Campbell v. La. Dept. of Transp. & Development,* 94–1052 (La.1/17/95), 648 So.2d 898, 901. However, under La. R.S. 9:2800, a plaintiff's burden is modified when pursuing a strict liability claim against a public entity (i.e., the DOTD) insofar as the plaintiff must prove "... the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the deficiency and failed to do so." La. R.S. 9:2800. **While we question the DOTD's assertion that the Clarkstons failed to prove it had actual or constructive notice of a defect in the roadway where the accident took place and failed to remedy such, we nevertheless find the Clarkstons did not have to sustain such a burden. Surprisingly, the Clarkstons did not assert a cause of action under strict liability in its original or amended petitions. <u>As such, La. R.S. 9:2800 is inapplicable</u>.** Therefore, we find no error in the trial court's denial of the motion for directed verdict.

The same is true here. The City's motion for summary judgment, the trial court ruling granting the motion, and the majority's affirmance are premised on the application of the notice requirement in La.R.S. 9:2800 and recovery under La.C.C. art. 2317.1. Nothing in Plaintiff's petition makes any claim or reference to strict liability. This court has recognized a plaintiff's right to "premise[ its] right to recover on the legal theories of negligence and strict liability" under either Article 2315 and/or Article 2317 and 2317.1. *Petre v. State ex rel. Dep't of Transp. & Dev.,* 00-545 (La.App. 3 Cir. 12/29/00), 775 So.2d 1252, 1258, *writ granted,* 01876 (La. 6/1/01), 793 So.2d 171, affirmed, 01-876 (La. 4/3/02), 817 So. 2d 1107. Likewise the Louisiana State Supreme Court has recognized that a public body's liability "may arise under a theory of negligence, La. Civ.Code art. 2315, or a theory of strict

2

liability, La.Civ.Code art. 2317." *Campbell v. Louisiana Dep't of Transp. & Dev.*, 94-1052 p. (La. 1/17/95), 648 So. 2d 898, 901.

Plaintiff alleges only Article 2315[1] general negligence claims against the City setting forth in its petition as follows:

> The above described accident and resulting injuries to Plaintiff, DEMETRIC TANNER, were caused through the sole fault and proximate fault and negligence of defendant, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, in the following non-exclusive ways:
>
> A) Failure to maintain the roadway and/or premises in a safe condition;
>
> B) Failure to inspect the roadway and/or premises to insure against unsafe conditions;
>
> C) Failure to warn pedestrians of unsafe conditions on the roadway and/or premises;
>
> D) Failure to properly patrol and supervise the roadway and/or premises;
>
> E) Allowing the premises to become dangerous without taking precautions to ensure the safety of pedestrians walking on the roadway and/or premises;
>
> F) Failure to properly close and maintain manholes located on the roadway and/or premises; and
>
> G) Any other acts of negligence known only to defendant which may be found during discovery proceedings and which may be proved at trial of this cause.

Therefore, for this reason alone, the trial court's grant of summary judgment must be reversed because of legal error. But even if this were not the case, the trial

---

[1] Under the negligence theory of art. 2315, the plaintiff bears the burden of showing, *inter alia,* that the public entity had knowledge of the problem, and failed to correct it within a reasonable time. *Watson, supra.* This knowledge may be actual, i.e. where the entity has been informed of or has discovered the defect, or constructive, i.e. **where the defect has existed over a period of time and under such circumstances that *in the exercise of due diligence* the public body would have had notice of it,** *Pickens v. St. Tammany Parish Police Jury,* 323 So.2d 430 (La.1975).

*Boudoin v. City of Kenner*, 89-39,540 (La.App. 5 Cir. 1/17/90), 556 So.2d 123, 124.

court judgment must be reversed because of other legal errors, i.e. there are general issues of material fact regarding constructive notice. The majority says that LCG's "failure to have a plan for periodic inspections does not impute constructive notice," citing the supreme court's decision in *Jones v. Hawkins*, 98-1259 (la. 3/19/99), 731 So.3d 1068. While it is true that our courts have held that constructive notice cannot be imputed to a public entity solely because it does not have *a plan* for inspection and maintenance, our courts have not held that a public entity meets its duty to maintain its streets and sidewalks in a reasonably safe condition[2] by doing absolutely nothing for twenty-three years. Although the City is not required to have a plan for inspection and maintenance of its streets and sidewalks it nevertheless "cannot sit back and ignore [] dangers posed" even when those dangers are not situated on the City's property, let alone when they are so located. See, *Irion v. State ex rel. Dep't of Transp. & Dev.*, 98-2616 p. 9, (La. App. 1 Cir. 5/12/00), 760 So. 2d 1220,

---

[2] The Louisiana State Supreme Court has repeatedly held municipalities have a duty to keep sidewalks and roadways in reasonably good repair. *Molbert v. Toepfer,* 550 So.2d 183, 186 (La.1989); *Shipp v. City of Alexandria,* 395 So.2d 727, 728 (La.1981); *White v. City of Alexandria,* 216 La. 308, 43 So.2d 618, 620 (1949).

> The Department of Transportation and Development shall adopt specific minimum safety guidelines with respect to highway and bridge design, construction, and maintenance for all public roads, highways, and streets under the jurisdiction of any political subdivision of this state and not in the state-maintained highway system. These guidelines shall correlate with and, so far as possible, conform to the system then current as approved by the American Association of State Highway and Transportation Officials allowing the flexibilities incorporated therein. . . .
>
> **The state, the Department of Transportation and Development, and any political subdivision of the state have a duty to maintain, repair, construct, or reconstruct any public road, highway, bridge, or street, or any portion thereof, in a manner that is not unreasonably dangerous for a reasonably prudent driver.**

La. R.S. 48:35 (D) and (E)(1)(a).

1228, *writ denied*, 00-2365 (La. 11/13/00), 773 So.2d 727. The second circuit in *Irion* recognized that the Louisiana Department of Transportation and Development's (DOTD) duty to keep the public highways in a "reasonably safe condition for persons exercising ordinary care and reasonable prudence" *Id*., includes the obligation to look for situations that "may endanger the safety of motorists" even if such "conditions are off of the right -of-way." *Id*. Thus, the City may choose not to implement a plan for maintaining its streets and sidewalks, but it cannot choose to do absolutely nothing and thereby maintain it is meeting its duty by equating its voluntary ignorance of dangerous conditions to lack of notice. The City must exercise reasonable care, and when it fails to do so and thereby fails to discover what it could easily discover in the exercise of reasonable care, it is deemed to have notice of unreasonably dangerous conditions. *Id*. "While DOTD cannot be imputed with knowledge of every defect on its roadways and shoulders, neither can DOTD escape liability *by negligently failing to discover that which is easily discoverable. Brown v. La. Indem. Co.,* 97–1344, p. 8 (La.3/4/98), 707 So.2d 1240, 1244." *Hager v. State, ex rel. Dep't of Transp. & Dev.*, 06-1557 p. (La. App. 1 Cir. 1/16/08), 978 So.2d 454, 467–68, *writ denied*, 08-347 (La. 4/18/08), 978 So.2d 349, and *writ denied*, 08-385 (La. 4/18/08), 978 So.2d 349. See also, *Falcon v. Louisiana Dep't of Transp.*, 13-1404 (La.App. 1 Cir. 12/19/14), 168 So.3d 476, *writ denied*, 15-133 (La. 4/10/15), 163 So.3d 813.

There is yet another genuine issue of material fact regarding actual or constructive notice. According to Plaintiff's expert witness, **the City created the unreasonably dangerous, defective condition.** In *Raymond v. Government Employees Ins. Co.*, 09-1327, pp. 5-7, (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, 1185–87, *writ denied*, 10-1569 (La. 10/8/10), 46 So.3d 1268 (emphasis added), this court found that when a public body makes a decision to do or not to do something which

5

later proves to have created an unreasonably dangerous condition plaintiff does not need to prove notice:

> The Plaintiffs' main contention at trial was that the area where Mr. Raymond was killed was defective for the failure to include a no-passing zone pennant sign. The DOTD argues that the trial court erred in refusing to require the Plaintiffs to prove notice of a defect as required by La.R.S. 9:2800 and in failing to instruct the jury of such requirement. The Plaintiffs argue that they were not required to prove notice because the DOTD created the dangerous condition and is charged with knowledge of that condition.
>
> . . . .
>
> In *Facheaux v. Terrbonne Consol. Gov't,* 615 So.2d 289, 293 (La.1993), the supreme court, in analogizing a public body's duty regarding a gate on a canal, discussed the element of knowledge as follows:
>
>> The court of appeal erroneously determined, however, that the parish had no duty to provide warnings in this instance because it was not proved that the parish had knowledge of any danger presented by the gate and its manner of operation. Cited as authority were cases where defects developed after construction of the facility, such as where a sign had been removed or where a defect developed over a period of time. *These cases and their requirement of knowledge are not applicable where the need to provide warnings arises from a danger inherent in the design and construction of the facility. A public body charged with maintaining a public route cannot claim lack of knowledge of the need to provide warnings where the danger is obvious and inherent in the design and construction of the facility.* A public body is held to know of the danger of an unmarked intersection, or a sharp curve, or a draw bridge, or, as in this case, a gate that raises and lowers automatically so as to block a canal used by boat operators. Likewise, the public authority must provide adequate warnings of unusual obstructions or perilous conditions so as to make the route reasonably safe for those traveling on it.
>
> In *Whatley v. City of Winnfield,* 35,132 (La.App. 2 Cir. 12/5/01), 802 So.2d 983, *writ denied,* 02–510 (La.3/22/02), 811 So.2d 939, the second circuit recognized that **the requirement of notice to a public body is inapplicable to a case where the dangerous condition was attributable to the public body or its employees. <u>Notice is only required when the defective condition is not caused by the public body's own act or negligence.</u>**

6

In *Johnson v. State ex rel. DOTD,* 06–898 (La.App. 3 Cir. 12/13/06), 946 So.2d 682, *writ denied,* 07–510 (La.4/27/07), 955 So.2d 693, this court followed the reasoning of *Whatley* and found that the DOTD was not entitled to notice of defective signage that it created. A stop sign at an intersection in a construction zone had been obscured from view by detour signs.

Furthermore, in *Rogers v. State ex rel. DOTD,* 02–809 (La.App. 3 Cir. 2/5/03), 838 So.2d 849, *writ denied,* 03–668 (La.5/2/03), 842 So.2d 1107, this court held that the DOTD had actual knowledge of the dangerous condition created by changing a fixed light to a flashing red light at the intersection. We found that the DOTD was aware of the special dangers that the intersection presented due to the skewed angle design and the high speeds of those traveling in the area.

As the DOTD has argued, both at the trial court level and to this court, the decision of whether to place a no-passing zone pennant sign was at the discretion of its engineers. **There is no need to prove notice when the DOTD makes the decision not to use a particular sign.**

Plaintiff's expert, Jason T. English (English), opines that the manhole cover in this case should have either been bolted down or tack welded to avoid its coming loose through various occurrences, and it should also be vented to avoid becoming dislodged by water or gas pressure. The majority says "[Mr. Wyble] never saw a manhole cover in Lafayette lifted by water pressure." But that is not an accurate recounting of the deposition testimony. Mitchell P. Wolfe (Wolfe), the Public Works Engineering Supervisor for the City, testified in his deposition that he "was not aware" of any "City of Lafayette manhole cover" being "lifted from water pressure" *but* **he had seen DOTD manhole covers lifted in the City of Lafayette by water pressure.** He further stated in his deposition testimony:

A.  This manhole cover has no vents.

Q.  Can these manhole covers come out of place by any reason, other than someone actually lifting it?

A.  **Yes, they have.  I've seen manhole covers get out of place before.**

Q.  And what things can cause it to come out of place?

A. Hydraulics, water. Excessive amount of water.

Q. What do you mean "hydraulics"?

A. The force of the water due to inundation of the street will sometimes policy and procedure (sic) the lid up."

Wolfe also testified in his deposition that when a manhole cover is in the path of vehicles it should be bolted down or tack welded in place. He says the cover here, in his layman's opinion, is not in the wheel path of vehicles, but he is not a qualified expert. Moreover, his reference to the cover being "in the wheel path of a vehicle" seems to refer to the traveling path of a vehicle on the street. Nevertheless, when pressed in his deposition he admits that vehicles may indeed pass over this manhole cover. English seems to consider the cover being "in the wheel path of a vehicle" to include location of the manhole cover where vehicles can roll over the cover. We are not in any position on summary judgment to make the determination of what "in the wheel path" means, nor can we reconcile the competing testimony without weighing evidence. English states that this cover *is in a wheel path* and *should be bolted down or tack welded to avoid becoming dislodged*. Moreover, English further stated in his affidavit, offered in opposition to the motion for summary judgment states (emphasis added):

> LCG failed to install a secured lid, or secure the existing lid. Manhole lids/frames are readily available in a bolted design that allows the lid to be bolted to the frame to secure the lid from potential displacement. In fact, according to the testimony of the LCG representatives, manholes in their jurisdiction located in vehicular wheel paths are supposed to be a secured or bolted design. **The manhole in this matter is located on the north side of Jefferson Street, in the potential wheel path of vehicles entering the adjacent parking lot from the street, or potential parking vehicles, especially temporary delivery trucks for the adjacent businesses. <u>In this regard, a manhole lid for the underground sewer system within 20 yards of the manhole in this matter is a bolted secured design, with numerous other bolted manhole lids along Jefferson street in this area</u>.** LCG failed to comply with their own policy regarding the installation of secured manhole lids in potential vehicular wheel paths.

The majority says that a photo of the manhole cover "clearly show[s] that it is not in the wheel path of traffic, but in a corner of a raised curb, next to a driveway and fire hydrant, and out of the lane of travel. Furthermore, pursuant to La.R.S. 32:143, no person shall park a vehicle within fifteen feet of a fire hydrant or in front of a public or private driveway, so pursuant to the law, there should be no vehicles in this area." This weighing of evidence and speculation by the majority is entirely inappropriate on summary judgment. It is at odds with the expert witness's testimony, and it is at odds with Wolfe's testimony for even he acknowledges "there's always [the] possibility" a vehicle could travel over this manhole cover. He clearly testified, as recounted by English in his affidavit, that if the cover is in a wheel path "you would want to put a bolt down or lock it" and "if we, Lafayette Consolidated Government, where going to have a manhole that had to be in the wheel path, we would require it to be a bolt-down." He also testified:

> Q. And on the day of this incident, did the City of Lafayette have anything to block or prevent a car from traveling on top of this manhole cover?"
>
> A. Not that I'm aware of.
>
> Q. Is there any ordinance or law preventing a car from traveling on top of this manhole cover?
>
> A. No.

**The question of whether this manhole cover is in a wheel path where vehicles can roll over it is a disputed genuine issue of material fact that cannot be resolved on summary judgment**.

> Summary judgment is not appropriate in situations involving issues of credibility. *Smith v. Lynn,* 32,093 (La.App.2d Cir.8/18/99), 749 So.2d 692.
>
> On a motion for summary judgment, the district court must ask not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff upon

9

the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Two Feathers Enterprises, Inc. v. First Nat'l Bank of Commerce,* 98–0465 (La.App. 4th Cir.10/14/98), 720 So.2d 398. . . .

> After reviewing the testimony, we conclude that the plaintiff produced sufficient evidence to support a trier of fact's finding that more probably than not the city employee's negligence created the hazardous condition of the unlocked meter cover. Based upon this record, the City failed to satisfy its burden of demonstrating the absence of a genuine issue of material fact. Consequently, the district court erred in granting the motion for summary judgment. Accordingly, we shall reverse the judgment and remand this case for further proceedings.

*Whatley v. City of Winnfield*, 35,132, pp. 7-8 (La. App. 2 Cir. 12/5/01), 802 So.2d 983, 986–87, *writ denied*, 02-0015 (La. 3/22/02), 811 So. 2d 939.

If the Plaintiff proves to the jury's satisfaction that this manhole cover should have been secured in place, then the City's failure to do so from the time it was installed means the City created the unreasonably dangerous condition[3] and *thus it is presumed to have knowledge of the hazardous condition.* "**When the public entity creates the defective condition by its own substandard conduct, it is presumed to have knowledge of the hazardous condition.** *Whatley v. City of Winnfield*, 35,132 (La.App. 2 Cir. 12/5/01), 802 So.2d 983, 986, *writ denied*, 02–0015 (La. 3/22/02), 811 So.2d 939; see also *Falcon v. La. Dep't of Transp.*, 13–1404 (La.App. 1 Cir. 12/19/14), 168 So.3d 476, 485, *writ denied*, 15–0133 (La. 4/10/15),

---

[3]     We have described the question of whether a defect presents an unreasonable risk of harm as "a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." *Reed v. Wal–Mart Stores, Inc.,* 97–1174, p. 4 (La.3/4/98), 708 So.2d 362, 364 (quoting *Tillman v. Johnson,* 612 So.2d 70 (La.1993) (per curiam)). As a mixed question of law and fact, it is the fact-finder's role—either the jury or the court in a bench trial—to determine whether a defect is unreasonably dangerous. Thus, whether a defect presents an unreasonable risk of harm is "a matter wed to the facts" and must be determined in light of facts and circumstances of each particular case. *E.g., Dupree v. City of New Orleans,* 99–3651, pp. 13–14 (La.8/31/00), 765 So.2d 1002, 1012 (citation omitted); *Reed,* 97–1174 at p. 4, 708 So.2d at 364.

*Broussard v. State ex rel. Office of State Bldgs.*, 12-1238, p.  (La. 4/5/13), 113 So.3d 175, 183–84.

163 So.3d 813." *Barnett v. City of Baton Rouge*, 16-222 (La.App. 1 Cir. 10/31/16), 206 So.3d 904, 908, *writ denied*, 16-2142 (La. 1/13/17), 215 So.3d 256. In *Barnett*, 206 So.3d at 908 (emphasis added), the first circuit found the plaintiff, through its expert witness, had set forth a disputed genuine issue of material fact that could not be resolved on summary judgment regarding whether the City-Parish created the defect:

> In response, Mr. Barnett argues that he is not required to prove notice, because the City-Parish created the dangerous condition and is charged with knowledge of that condition. Specifically, in his report, Mr. Blanchard noted that the school zone traffic control sign failed due to cyclical loading for which it was not designed. Mr. Blanchard opined that the City-Parish was negligent in purchasing and installing the subject fixture given the wind loads of the Baton Rouge area.

> The City-Parish has not addressed the assertions made in Mr. Blanchard's report that the sign selected was not sufficient to withstand the Baton Rouge area storm and wind conditions and Mr. Barnett's argument that the City therefore created the defect. **Mr. Blanchard's report creates a genuine issue of material fact regarding whether the City-Parish created the defective condition by its own substandard conduct in selecting and installing a potentially deficient sign in the Baton Rouge area. If established, under the current jurisprudence, either actual or constructive notice need not be proven or such knowledge of the hazardous condition could be presumed.**

The City's witnesses here also state in deposition testimony that the City is aware of the fact that plumbers and other private contractors employed by business owners in the area need to enter this manhole "from time to time" for various purposes. Additionally, Wolfe and Wiltz acknowledge that these third parties are supposed to notify the city when they need to enter the manhole but do not do so. Thus, according to Wolfe and Wiltz, the City had actual notice of these authorized and unauthorized disturbances of manhole covers and yet the City proudly proclaims it does not inspect these manhole covers "at all unless someone complains." Despite notice that third parties from "time to time" remove these manhole covers the City did nothing over the course of twenty years or more to determine whether their

manhole covers were left in an unreasonably dangerous condition by these unauthorized or authorized third parties. One can easily surmise that one reason the City requires third parties to get permission to enter the manhole covers is so that the City can follow up and make sure the covers are replaced correctly. And yet, the City boldly proclaims *it has never made any effort to do so*. To add insult to injury, according to Wolfe, **the City not only *has no requirement that its employees report any problem with the manhole cover*, but Wolfe says there is not even "an expectation" that any problem be reported by City workers**. This statement by Wolfe belies the majority's statement that "He agreed that other employees would report a cover that is not flush in the frame." Wolfe says reporting any perceived problem is "self-driven" by the employees. Additionally, when asked "are any City of Lafayette employees trained or educated on at what point a manhole cover becomes a dangerous condition if its not flush with the street and its [not] sitting perfectly" he replied (emphasis added):

> **No**. I understand where you're coming from. We are not—I don't know of any training about going out and looking for manhole or drain covers that are not flush with the frame. Nine times out of ten, you would not be able to determine that from a drive-by, and we don't inspect them at all that I'm aware of.

This admitted failure on the part of the City to enforce its own requirements which relate to reasonable maintenance of its manhole covers further indicates that the City is deemed to know of any unreasonably dangerous condition which it could have easily avoided and/or discovered by enforcement of its policy. This bespeaks more than voluntary ignorance, it is willful negligence for which no notice, constructive or otherwise, is required to hold the City accountable.

> The requirement of notice to the municipality is inapplicable to a case where the dangerous condition is attributable to negligent acts of the city or its employees. Only where the negligence relied upon is the failure of the city to repair a defective condition not caused by its own act or **neglect** is the question of notice an essential element. *Pickens v.*

12

*St. Tammany Parish,* 323 So.2d 430 (La.1975). **When the municipality creates the defective condition by its own substandard conduct, it is presumed to have knowledge of the hazardous condition.** *Toledano v. Sewerage & Water Board,* 95–1130 (La.App. 4th Cir.3/14/96), 671 So.2d 973.

*Whatley v. City of Winnfield*, 35,132 (La.App. 2 Cir. 12/5/01), 802 So.2d 983, 986, *writ denied*, 02-15 (La. 3/22/02), 811 So.2d 939 (emphasis added).

> Constructive notice means notice which the law imputes from the circumstances of the case and is based on the theory **that negligent ignorance is no less a breach of duty than willful neglect**, and that negligence in not knowing of the dangerous condition may be shown by circumstances. . . .
>
> The fact that a municipality is charged with the duty of exercising ordinary care to keep its streets and pavements in a reasonably safe condition for public use, implies that it is charged with notice of defects of which the municipality, through its authorized officers, could obtain knowledge or discover by the exercise of ordinary care and reasonable diligence.

"Constructive notice," 19 McQuillin Mun. Corp. § 54:183 (3d ed.) (footnotes omitted) (emphasis added).

In addressing constructive notice under Article 2315 general negligence the courts have said:

> The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde. *Dufrene v. Gautreau Family, LLC,* 07–547 (La.App. 5 Cir. 2/22/08), 980 So.2d 68, *writ denied,* 980 So.2d 694, 2008–0629 (La.5/9/08), *writ denied,* 980 So.2d 698, 2008–0628 (La.5/9/08). One is presumed to have constructive notice of a defect or dangerous condition when it is shown to have existed for such a long period of time that knowledge thereof can be presumed, or that it can be said that one should have had knowledge of the condition. *Charan v. Bowman,* 06–0882 (La.App. 1 Cir. 8/1/07), 965 So.2d 466, *writ denied,* 07–1773 (La.11/9/07), 967 So.2d 505.
>
> Several Louisiana cases have addressed the issue of a custodian's failure to discover vices or defects in things under their custody for a lengthy period of time. For example, in *Moody v. Blanchard Place Apartments,* 34,587 (La.App. 2 Cir. 6/20/01), 793 So.2d 281, the plaintiff sustained injuries when he received an electric shock from the stove on which he was cooking due to a short circuit. The stove was approximately ten years old at the time of the plaintiff's injury. *Id.* at 284. The onsite manager of the plaintiff's apartment building testified

13

during a deposition that she inspected the stoves in the apartment building; however, she never inspected the actual wiring beneath the cooktop where the short circuit occurred. The onsite manager did state, however, that repairmen occasionally made repairs to the stove. *Id.* The jury returned a verdict holding the defendants liable. On appeal, the Second Circuit took up the question of whether the jury was manifestly erroneous in finding that the defendants knew or should have known that the stove presented a risk of harm. The Second Circuit found no manifest error in the jury's finding, noting that the property management company's "policy of not requiring that (and almost making it cost prohibitive to have) qualified technicians maintain the electrical appliances on their premises is indicative that it knew or should have known that a dangerous condition was or could have been present in any of its appliances." *Id.* at 294–95.

In *Johnson v. City of Winnfield,* 37,939 (La.App. 2 Cir. 12/10/03), 862 So.2d 433, the plaintiff was injured when he stepped on a manhole cover. As he stepped on the manhole cover, the manhole cover shifted, and the plaintiff's leg fell into the sewer line. Immediately after the accident, the store manager lifted the cover so the plaintiff could extricate his leg. *Id.* at 435. The manager described the cover as "worn on the bottom from erosion," with the "little lip around the bottom, that sits in the hole, that part was worn off." *Id.* The manager noted at trial that he had worked at the grocery store for 23 years, and had never noticed anything wrong with this manhole cover. The city did not have a routine manhole inspection policy, however, a city maintenance worker testified that he would have inspected this particular manhole shortly before the accident, after a private contractor had worked on the main sewer line from that location. That same worker replaced the manhole cover after the plaintiff's accident, even though he testified that when he arrived, the cover looked "fine"; he tried walking across it, "and it didn't pop up on [him]." *Id.* Three city maintenance workers (including the worker who replaced the manhole cover that caused the plaintiff's injury) testified they had never received any complaints regarding the manhole cover. The Second Circuit found no error in the trial court's conclusion that the city had actual or constructive knowledge that the manhole cover was unstable. *Id.* at 437–38.

In this case, after conducting a *de novo* review of the record, we find that there is a material issue of fact as to whether Wendy's had constructive or actual notice of the alleged defects in the restaurant wall. Dr. Avent averred that the failure to bolt the wall to the structural steel **was a defect that existed at the time of the construction of the restaurant and that Wendy's should have noticed the defect at the time of construction.** The architectural plans for the restaurant clearly indicate that the north wall was supposed to be bolted to the structural steel. Dr. Avent indicated that Wendy's would have discovered the defect *if it had exercised due care* and had conducted proper inspections during the construction of the restaurant. Wendy's did not introduce evidence contesting these findings. *Moreover, the parties do not*

14

*dispute that the restaurant has been in Wendy's custody for approximately twenty years, and there is no indication in the record that Wendy's ever inspected the wall or discovered the alleged defect.*

*Meaux v. Wendy's Int'l, Inc.*, 10-111, p.p. 17-19, (La.App. 5 Cir. 10/26/10), 51 So.3d 778, 788–89, *writ granted*, 10-2613 (La. 2/18/11), 57 So. 3d 321.

Likewise, according to Plaintiff's expert the City's failure to secure this manhole cover or at the very least to use a vented cover created an unreasonably dangerous defect at the time of installation of the cover and the City has had over twenty years to correct the problem. And like the defendant in *Wendy's*, the City never inspected this manhole cover even though it knew that both authorized and unauthorized third parties remove and replace the cover, it knew that water may cause the cover to lift, and it knew vehicles can roll over this cover. In light of the City's self-proclaimed "turn a blind eye" approach to fulfilling its duty to maintain the streets and sidewalks in a reasonably safe condition it may be a sobering thought to just close one's eyes and imagine oneself stepping onto a manhole cover in Lafayette, Louisiana, and falling in.

For the reasons stated I respectfully dissent.