# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 21-11

**GARY JONES**

**VERSUS**

**TOWN OF GUEYDAN**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, DOCKET NO. 103910
HONORABLE MICHELLE BREAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## CHIEF JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Elizabeth A. Pickett and Shannon J. Gremillion, Judges.

**REVERSED AND REMANDED.**

Christopher McCall
Baggett, McCall, Burgess, Watson & Gaughan, LLC
3006 Country Club Road
P.O. Drawer 7820
Lake Charles, LA 70606-7820
(337) 478-8888
COUNSEL FOR PLAINTIFF/APPELLANT:
    Gary Jones

Joy C. Rabalais
H. Edward Barousse, III
Cranay D. Murphy
Kate Bailey Labue
Borne, Wilkes & Rabalais, L.L.C.
200 West Congress St., Suite 1000
P.O. Box 4305
Lafayette, LA 70502-4305
(337) 232-1604
COUNSEL FOR DEFENDANT/APPELLEE:
    Town of Gueydan

**COOKS, Chief Judge.**

On October 26, 2016, Plaintiff, Gary Jones, attended the wedding of his uncle at the Gueydan Civic Center. The Civic Center was owned and maintained by Defendant, the Town of Gueydan. After leaving the function, Plaintiff and another guest, Troy Derouen, were carrying an ice chest out to Plaintiff's vehicle, which was parked in the Civic Center parking lot. According to Plaintiff, the sidewalk leading to the parking lot was obstructed, so he and Derouen instead began to walk across a grassy area to get to his truck. While doing so, Plaintiff suddenly walked into a hole and fell to the ground. As a result of the fall, Plaintiff suffered a broken right fibula, which detached from his ankle and required surgery.

On September 14, 2017, Plaintiff filed a Petition for Damages, asserting Defendant was responsible for the hole which caused his injury. Defendant answered, denying Plaintiff's allegations and asserting certain affirmative defenses. After discovery and the taking of Plaintiff's deposition, Defendant filed a Motion for Summary Judgment on March 12, 2020 contending Plaintiff lacked any evidence to support a finding of actual notice of any hole as required by La.R.S. 9:2800. Plaintiff opposed the motion, and a hearing was held on May 18, 2020. After arguments, the trial court granted Defendant's motion for summary judgment and dismissed Plaintiff's claims with prejudice. A judgment in accordance with that ruling was signed on May 28, 2020.

Plaintiff appeals the trial court's judgment granting the motion for summary judgment, contending he presented evidence of actual notice and Defendant's breach of their duty to use reasonable care to warn Plaintiff of the known unreasonable risk of harm. At a minimum, Plaintiff asserts there were material factual disputes which should have precluded the granting of summary judgment. Finding merit in Plaintiff's contentions, we reverse the granting of summary judgment and remand the matter for further proceedings consistent with this opinion.

*Standard of Review*

Summary judgments are reviewed *de novo*, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Summary judgment is favored by the law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

In 1997 the legislature enacted La.Code Civ.P. art. 966(C)(2), which clarified the burden of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, p. 6 (La. 2/20/04), 866 So.2d 228, 233 (citing *Hardy v. Bowie*, 98-2821, (La. 9/8/99), 744 So.2d 606).

When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967(B). A fact is material when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith*, 639 So.2d at 751 (citations omitted) (alteration in original). In other words, a "material" fact is one

3

that would matter on the trial on the merits. "Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Id.* In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.*, 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427.

Louisiana Civil Code Articles 2317 & 2317.1 require that in order to prevail on his claim against Defendant, Plaintiff is required to prove, (1) Defendant had custody of the area in question; (2) that the area contained a defect that created an unreasonable risk of harm; (3) that the defect was the cause of the harm; and (4) the custodian of the area knew or should have known of the defect. *Ardoin v. Lewisburg Water System*, 07-180 (La.App. 3 Cir. 7/18/07), 963 So.2d 1049.

In addition, a case against a public entity, such as Defendant, requires Plaintiff to prove Defendant had either actual or constructive notice of the alleged vice or defect, had a reasonable opportunity to repair the defect, and failed to do so pursuant to La.R.S. 9:2800(C) & (D) which state:

> C. [N]o person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>
> D. Constructive notice shall mean the existence of facts which infer actual knowledge.

"A municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by exercise of ordinary care . . . the municipal authority must have known of its existence, and . . . had reasonable opportunity to guard the public from injury by remedy of the defect." *Ambrose v. City of New Iberia*, 08-1197, p. 2 (La.App. 3 Cir. 4/1/09), 11 So.3d 34, 37.

4

The trial court apparently found there was a lack of evidence to support Plaintiff's allegations that Defendant had actual or constructive notice of the hole in question. To defeat Defendant's motion for summary judgment based on a lack of notice, Plaintiff must show there was evidence, in the light most favorable to the non-moving part, sufficient to support a finding that Defendant had actual or constructive notice of the defect. Our review of the record establishes Plaintiff presented sufficient evidence in this regard.

There was no dispute that Defendant was the owner of the Civic Center property where Plaintiff fell. In its memorandum in support of its motion for summary judgment, Defendant acknowledged "the grassy area wherein the alleged lay situated was in its custody and control at the time of the incident." Testimony from Gilbert Hebert, a maintenance supervisor for the Town of Gueydan, indicated the hole arose as a result of a rosebush being removed from the property. He stated as follows:

Q. Was there a tree taken out of the area at some point?

A. There was a bush.

Q. Okay. Is that hole where the bush used to be?

A. Yeah.

Q. Okay. What kind of bush was it?

A. I think a little rosebush.

Mr. Hebert then testified as to the process he and his staff used to fill in the hole that was made when the rosebush was removed:

Q. Did y'all – what did y'all do after you dug up the rosebush? What did y'all do?

A. Tried to patch it up.

Q. What were you patching it up with?

A. The dirt.

5

Q. The dirt that came out when you removed it?

A. Yeah.

Q. Did you bring any additional dirt or you just used what was there?

A. Just used what we had.

. . .

Q. Okay. And that's something [the hole] you noticed pretty much every time that you would mow?

A. Well, we would put the dirt back in and we always put the grass that we cut in it.

Q. Okay. So you were trying to kind of fill it up as you went?

A. Yes, sir.

Q. And was it something where it wasn't staying? You would have kept adding?

A. No. it was staying, but we always put grass on top of it to make sure it would stay.

Q. Okay. And was there anything else that you would add on top of it besides grass.

A. No.

Q. You never came in with some fresh topsoil?

A. No.

Mr. Hebert also acknowledged that it was common for visitors to the Civic Center to walk through the grassy area where Plaintiff fell. He also agreed it was the safe thing to do to make sure there were no holes in that area.

Alton LeJeune, who worked for Mr. Hebert, testified he removed the rosebush from the area in question. He corroborated Mr. Hebert's testimony that no new dirt or topsoil was added to the hole after removal of the rosebush. Mr. LeJeune did state he believed the alleged hole Plaintiff fell in was more of a dip than a hole, though he did acknowledge he did not view the area where the hole was located until well after the date of the accident.

The deposition testimony of Mr. Hebert and Mr. LeJeune establishes Defendant's employees were aware of the hole (which they both testified they created, by removing the rosebush). Mr. Hebert further acknowledged he knew people often cut through the grassy area rather than walk on the sidewalk, and testified he realized it was prudent to make sure no holes existed. Mr. Hebert also testified that he always made sure to add grass clippings to the hole to try and cover it when he mowed the grass, though he acknowledged he never added any topsoil or mud to fill the hole. Accordingly, we find the testimony of Defendant's employees is sufficient to create a genuine issue of material fact regarding the Town of Gueydan's notice of the defect in their premises.

Moreover, as this court has noted "[a] municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by exercise of ordinary care . . . the municipal authority must have known of its existence, and . . . had reasonable opportunity to guard the public from injury by remedy of the defect." *Ambrose*, 11 So.3d at 37. As can be seen from the above referenced testimony, Plaintiff presented evidence below that Defendant knew or should have known of the alleged defect, had an opportunity to repair the defect, and failed to do so. Notice seems particularly evident under the facts of this case, as it was Defendant itself that created the hazard by removing the rosebush.

The jurisprudence is clear that "when the public entity creates the defective condition by its own substandard conduct, it is presumed to have knowledge of the hazardous condition." *Barnett v. City of Baton Rouge*, 16-222, p. 4 (La.App. 1 Cir. 10/31/16), 206 So.3d 904, 908, citing *Whatley v. City of Winnfield*, 35,132 (La.App. 2 Cir. 12/5/01), 802 So.2d 983, 986, *writ denied*, 02-0015 (La. 3/22/02), 811 So.2d 939. *See also Falcon v. La. Dep't of Transp.*, 13-1404 (La.App. 1 Cir. 12/19/14), 168 So.3d 476, 485, *writ denied*, 15-133 (La. 4/10/15), 163 So.3d 813 (where the court explained that the public entity involved had a "duty to know what it should

7

have known and take corrective measures based on that knowledge.") We find clear error on the trial court's part in not finding, at a bare minimum, there were material issues of genuine fact as to whether Defendant had knowledge of the hazardous condition.

Plaintiff also asserts the trial court erred in finding that Plaintiff would be unable to meet his burden of proving the hole presented an unreasonable risk of harm. Plaintiff testified in his deposition the hole he fell in was approximately eight inches to a foot deep and about two feet wide. Defendant takes issue with this and argues the hole was nowhere near that size. No witness for Defendant could testify that he viewed the hole the night or following day after Plaintiff fell. Alton LeJeune testified he did not view the hole in question until well after the accident occurred. To find there were no genuine material issues of fact to allow for the granting of summary judgment in this matter, the trial court had to completely discredit and discard Plaintiff's testimony as to the size of the hole. Such credibility calls and factual determinations are outside the scope of the summary judgment procedure, and the trial court erred in making such determinations.

Likewise, we find merit in Plaintiff's argument that the trial court erred in granting summary judgment on the issue of reasonable care when Plaintiff offered evidence that Defendant did not exercise reasonable care in repairing the defect and warning the attendees of events at the civic center. Plaintiffs presented the testimony of Mr. Hebert who stated he was aware of the hole and attempted to fill the hole on several occasions by placing grass clippings in the hole. Notably he testified he never filled the hole with additional dirt at any time. Further, the Mayor of the Town of Gueydan, Chris Theriot, acknowledged in his deposition there was a duty on the part of its employees to fix holes that arose, and that, apparently, his employees did not do so in a satisfactory manner. He stated as follows:

> I mean, expectations of maintaining grass, yes, I expect my men to maintain the grass. Apparently, he didn't put enough dirt in the hole or it subsided and it sunk.

At a minimum, Plaintiffs presented evidence which presented genuine material issues of fact as to whether Defendant exercised used reasonable care in this case. Therefore, summary judgment was inappropriately granted by the trial court.

## DECREE

For the foregoing reasons, the trial court's judgment granting the Town of Gueydan's motion for summary judgment and dismissing Plaintiff's claims is reversed and the matter is remanded to the trial court. Costs of this proceeding are assessed to the Town of Gueydan in the amount of $3,829.70 in accordance with La. R.S. 13:5112.

**REVERSED AND REMANDED.**